Good day. Thank you, Your Honor. All right. The last case being argued today is Barnes v. Nuttall. I don't know if we've heard from Mr. Barnes. Okay, so we're going to take Mr. Barnes's case on submission. And we have Miss Nephew. Did I pronounce that right? Good morning, Your Honors. It's Nephew. The P is silent, but there's no way to tell that from looking at it. So you have five minutes. Go ahead. Good morning, Your Honors. May it please the court. The court previously held that it could not determine if Mr. Nuttall, who is the sole surviving defendant in this case, was entitled to qualified immunity because he had not submitted a declamation in support of defendant's summary judgment motion. He has now done so, and in that declaration, he explained that the challenge policy, which he adopted, serves the same legitimate penological interests that this court held entitled only defendants to qualified immunity. As a result, the district court properly held that he also was entitled to qualified immunity and granted summary judgment. Yes, Your Honor. The question is, was this a retrospective statement of what might have been, but wasn't the action at the time? In Salbuden, we said very clearly that the fact that there is a good reason doesn't mean that that gives qualified immunity if that wasn't in fact the reason. And what evidence is there here that your client didn't simply come up with this when at the time the basis was that he thought people of a certain group should wear a certain thing or should other, rather than the answer that he found he gave? What evidence of that is there? Yes, Your Honor. It's true that, as I think you're referring to, his declaration says he doesn't have an independent recollection of the process of approving these particular directives. He doesn't have an independent recollection. He kind of says what they said is true. You know, it looks an awful lot as if he's just saying, oh, now I know what I should have been thinking. And why should – you know, I'm not saying that there aren't good reasons because of which he could have done it. But what makes me confident that that's what was going on or that that, at least, isn't a fact question? Because if it is a fact question – Your Honor. Go ahead. Go ahead. Yes, Your Honor. The reason it's not a fact question is that plaintiff didn't dispute it. Plaintiff didn't say this is insufficient. Plaintiff didn't say he's not competent to testify because of his lack of recollection. If plaintiff didn't raise these questions – Well, plaintiff is pro se. That's true, Your Honor, yes. And, you know, you're now telling me what a good lawyer would have said to your client. And I don't doubt that a good lawyer would have said that. What – you know, I'm not sure what is appropriate to do. I understand Your Honor's concerns. I think that given the procedural posture, the lack of an actual dispute of facts is all that I can offer. In his declaration, he had no independent recollection of drafting the directive, but he didn't say he had no recollection of the reason for the directive. In his declaration, he articulated the reason related to security in terms of hiding contraband, and he also said that he consulted the legal counsel, the Office of Legal Counsel, was involved in drafting it, and that they consulted the various religious – it was done in coordination with religious leaders of all faiths. So he has some recollection of what happened at the time, right? Yes, Your Honor, and that certainly provides facts that, again, were not disputed and really could not be disputed that as to the legitimate penological reasons for adopting this policy, again, reasons that this court has previously found suffice to grant a summary judgment motion and qualified immunity that way. I have some problem with the statement that it gives greater security, because if the idea is that somebody who has anything on their head makes it more difficult to search, why is that worse for a yarmulke than this sort of thing? I mean, that as a – Yes, Your Honor, it's because this particular – Yeah, go ahead. Go ahead. Excuse me, Your Honor, a little bit of a lag. This particular headgear was particularly bulky. It's meant to cover and contain dreadlocks, which are much larger. And so, therefore, there is more physical space underneath one than under a yarmulke. And that's why, incorrectly but reasonably, the defendant thought that limiting those two – limiting the distribution of those two people who were of a particular religion would be constitutional. But it certainly serves a security interest in that, by their nature, you can simply fit more things underneath them. All right. Thank you. Ms. Neview will reserve a decision. Have a good day. Thank you very much, Your Honors.